IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

FIELDTURF USA, INC., a          :
Florida corporation and         :
FIELDTURF TARKETT, INC., a      :
Canadian company,               :
                                :   Civil Action No. 4:06-CV-224 HLM
            Plaintiffs,         :
                                :
      vs.                       :
                                :       DEMAND FOR JURY
SPECIALTY SURFACES              :
INTERNATIONAL, INC., t/a        :
SPRINTURF, a Pennsylvania       :
corporation,                    :
                                :
            Defendant.          :

**SPRINTURF'S OPENING CLAIM CONSTRUCTION BRIEF**

COMES NOW Defendant Specialty Surfaces International, Inc., t/a Sprinturf (hereinafter "Sprinturf") and, in accordance with Local Patent Rule 6.5, hereby files this its Sprinturf's Opening Claim Construction Brief, and respectfully shows this Court as follows:

## TABLE OF CONTENTS

I.   Preliminary Statement...................................................4

II.  Introduction..........................................................6

III. The '689 And '752 Patents.............................................8

IV.  The Law of Claim Construction........................................11

V.   The Claim Terms At-Issue and Sprinturf's
     Proposed Construction...............................................13

     '689 Patent........................................................13

     '752 Patent........................................................14

     A.   "Course" means "a distinct, continuous layer
          when installed." ............................................17

     B.   "A bottom course of intermixed hard and resilient
          granules" means "a distinct, continuous layer
          of intermixed hard and resilient granules
          when installed." ...........................................19

     C.   "Disposed upon" means "located on." ........................19

     D.   "A top course substantially exclusively or
          resilient material" means "a distinct,
          continuous layer consisting entirely of
          resilient granules when installed." ........................19

     E.   "A lower portion of the ribbons having said slots
          extended open forming laterally linked strands"
          means "a lower portion of the ribbons slit
          discontinuously (not a monofilament of synthetic
          grass) and extended open forming strands that
          are connected at the sides." ...............................24

     F.   "Substantially identical size distribution" means
          "80% by weight of hard and resilient granules
          in the bottom course distributed in a range
          spanning a numerical difference of no more than
          40 screen mesh standard." ..................................25

VI.  Conclusion...........................................................25

2

## TABLE OF AUTHORITIES

*Alloc, Inc. v. International Trade Commission,* 342 F.3d 1361, 1370 (Fed. Cir. 2003) ....................................................................21

*Atofina v. Great Lakes Chem. Corp.,* 441 F.3d 991, 996 (Fed. Cir. 2006) ............................................................................................12

*Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.,* 262 F.3d 1258, 1268 (Fed. Cir. 2001) ............................13

*C.R. Bard Inc. v. United States Surgical Corp.,* 388 F.3d 858, 864 (Fed. Cir. 2004) ...............................................................21

*Cephalon, Inc. v. Barr Labs., Inc.,* 389 F. Supp. 2d 602, 604 (D. Del. 2005) ......................................................................................12

*Chef Am., Inc. v. Lamb-Weston, Inc.,* 358 F.3d 1371, 1374 (Fed. Cir. 2004) ..........................................................................................24

*Digital Biometrics, Inc. v. Identix, Inc.,* 149 F.3d 1335, 1347 (Fed. Cir. 1998) ........................................................................21

*Eastman Kodak Co. v. Goodyear Tire & Rubber Co.,* 114 F.3d 1547, 1556 (Fed. Cir. 1997) ...........................................................23

*Fieldturf v. Sports Construction Group LLC,* (N.D.  Ohio, 06-CV-2624, June 28, 2007) .....................................................................5

*Hockerson-Halberstadt, Inc. v. Converse, Inc.,* 183 F.3d 1369 (Fed. Cir. 1999) .........................................................................21

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,* 381 F.3d 1111, 1115 (Fed. Cir. 2004) ......................................11

*Kx Indus., L.P. v. PUR Water Purification Prods.,* 108 F. Supp. 2d 380, 387 (D. Del. 2000) ...............................................................5

*Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 384-91 (1996) .................................................................................5, 11

*Microsoft Corp. v. Multi-Tech Sys., Inc.,* 357 F.3d 1340, 1348 (Fed. Cir. 2004) ......................................................................21

*O.I. Corp. v. Tekmar Co.,* 115 F.3d 1576, 1580-2 (Fed. Cir. 1997) ....................................................................................................21

*On Demand Mach. Corp. v. Ingram Indus., Inc.,* 442 F.3d 1331, 1337-38 (Fed. Cir. 2006) ....................................................12

*Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) .........11

*Precor Inc. v. Fitness Quest, Inc.,* 2006 U.S. Dist. LEXIS 63244 (W.D. Wash. 2006) .............................................................................6

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.,* 242 F.3d 1337, 1341 (Fed. Cir. 2001) ..............................................20

*Wang Labs., Inc. v. America Online, Inc.,* 197 F.3d 1377, 1382 (Fed. Cir. 1999) ........................................................................20

*Watts v. XL Sys., Inc.,* 232 F.3d 877, 882-3 (Fed. Cir. 2000) .......20

Sprinturf submits this memorandum of law in support of its proposed constructions of claim terms in the two patents in suit: U.S. Patent Nos. 6,551,689 (Ex. 1) and 6,746,752 (Ex. 2) (the "'689 patent" and "'752 patent," respectively).

## I.   PRELIMINARY STATEMENT

The '689 and '752 patents both relate to synthetic grass products – ie. artificial turf products that are typically installed on athletic fields.  Plaintiff FieldTurf Tarkett Inc. is the owner of the `689 and `752 patents and plaintiff FieldTurf USA, Inc. is the exclusive licensee of the patents.  The plaintiffs collectively will be referred to hereinafter as "Fieldturf."

The application that led to the `752 patent was a divisional application of the application that led to the `689 patent.  As such, although the claims of the `752 patent are distinct from those of the `689 patent, they are based on the same disclosure.[1] Accordingly, the patents-in-suit are essentially identical with the exception of the claims.

In the Joint Claim Construction Statement filed with the Court on April 27, 2007 (attached hereto as Ex. 3), the parties identified four unique phrases in the '689 and '752 patents for construction, which essentially related to the "bottom course" and "top course" of

---

[1] Since the `689 and `752 patent specifications are identical, for ease of reference, supporting references may be made only to the `689 patent in this brief.

4

the infill layer[2] of the synthetic grass, and the "slits" in the grass that are "extended open forming laterally linked strands disposed in a lattice structure enmeshing the surrounding particulate infill material."  Ex. 1, `689 patent, Col 12:28-57 (claim 1); Ex. 2, `752 patent, Col 12:36-54 (claim 1).  However, on June 28, 2007, in a case involving the same patents at issue in this case, Judge Gaugan of the U.S. District Court for the Northern District of Ohio issued a Memorandum Opinion and Order interpreting several terms of the `689 and the `752 patents. Ex. 4, Memorandum Opinion and Order, *Fieldturf v. Sports Construction Group LLC,* (N.D. Ohio, 06-CV-2624, June 28, 2007) (hereinafter "the Ohio case"). Sprinturf has considered this claim construction and revised its proposed construction accordingly, largely adopting the court's construction of related terms at-issue in the Ohio case.

The Federal Circuit has emphasized the importance of uniformity of claim construction of a single patent. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 390 (1996).  There are sensible policy reasons for a Court to construe patent claims consistently with other courts that have undertaken the same endeavor. *See Kx Indus., L.P. v. PUR Water Purification Prods.,* 108 F. Supp. 2d 380, 387 (D. Del. 2000) ("While the court's previous opinion does not

---

[2] The recitation of the "top course" is identical in each patents' claims and, as such, will only be addressed once in this brief.  The recitation of the "bottom course" in each patents' claims is slightly different and, as such, will be treated separately for each patent.

have issue preclusive effect against PUR in this case, to the extent the parties do not raise new arguments, the court will defer to its previous construction of the claims."). The Ohio federal court's interpretation of the terms "course," "substantially exclusively," "disposed upon," and "laterally linked strands" are instructive but not dispositive of the claim construction issues in this case, particularly since Sprinturf was not a party to that action and raises new arguments herein not raised in that litigation. *See Precor Inc. v. Fitness Quest, Inc.*, 2006 U.S. Dist. LEXIS 63244 (W.D. Wash. 2006) (the claims at issue had previously been construed in the district by another court, but the court considered the decisions from plaintiffs' previous action against another alleged infringer as important, but not dispositive, to the instant inquiry), *citing Kx Indus., L.P.,* 108 F. Supp. 2d at 387 (D. Del. 2000).

## II.  INTRODUCTION

The protection that the patent laws give inventors is not unlimited. It extends to the invention described and claimed in the patent; it does not extend to inventions not described and not claimed and it does not extend to products that are considered prior art. The patents-at-issue in this case are directed to specific synthetic grass (turf) products that have two distinct layers of particulate infill material, namely "a bottom course" of intermixed

granules –– hard granules (such as sand) and resilient granules (such as rubber) ––, and "a top course" of rubber granules only. Ex. 1, `689 patent, Col 1:10-15.  These synthetic grass products are "for installation on a supporting substrate."  Ex. 1, `689 patent, Col 12:28-29 (claim 1); Ex. 2, `752 patent, Col 12:36-37 (claim 1).

Nevertheless, Fieldturf seeks to hold Sprinturf liable for installing a single turf product in Puerto Rico that has a single course of homogeneously mixed sand and rubber particles.[3]  To do so, Fieldturf asks this Court to adopt strained and erroneous constructions of various claim terms, contrary to the plain meaning of the claims, the patent specification, including the figures, and Fieldturf's own statements and actions before the Patent Office in order to obtain the patent.

Fieldturf's proposed claim construction seeks to stretch the clear meaning of the terms-in-dispute to encompass prior art synthetic turf products that it expressly disavows in the specification.  Because the specification of the '689 and `752 patent distinguishes and criticizes such prior art at great length, and describes in detail the "disadvantages result[ing] from the use of a uniformly mixed granular infill . . . where hard sand particles and resilient rubber particles are mixed and blended in a uniform proportion throughout the depth of the infill," Ex. 1 at Col 1:59-

---

[3] Sprinturf initially installed the product with an all-rubber infill layer.  Sand was later added and blended in to the infill layer.

63; Fieldturf's proposed construction is ambiguous, overbroad, and improperly encompasses the prior art.

Finally, the claim interpretations of "layer," "course," and "laterally linked strand" in the Ohio case are at odds with Fieldturf's proposed construction in this case.  Fieldturf should be collaterally estopped from arguing a claim construction that differs from the construction it proposed and it fully litigated in the Ohio case.   Sprinturf's revised proposed constructions are consistent with the decision in the Ohio case and are based on the intrinsic record of the patents-in-suit.   As such, Sprinturf respectfully submits that the Court should adopt its proposed constructions.

### III. THE `689 AND `752 PATENTS[4]

Figure 1 of the '689 patent, reproduced below, shows the claimed synthetic grass product.   It has upstanding synthetic ribbons (2) extending upwardly from a backing (1). Ex. 1, `689 patent, Col. 5:7-10. Installed amongst the ribbons is the "infill layer" (3) of "particulate material." Id. at Col 5:10-11.   The infill layer itself is made up of two layers: a bottom course (5) and a top course (6). Id. at Col 9:57-58.   The bottom course (5) is a mixture of hard sand granules and resilient rubber granules. Id. at Col 9:58-59.   The top course (6) is "substantially exclusively of

---

[4] Claim 1 of the `752 patent is essentially identical to claim 1 of the `689 patent for purposes of this claim construction exercise, except the "bottom course" in the `752 patent is further limited to hard and resilient granules of "substantially identical size distribution." Ex 2,`752 Patent (Claim 1, Col 12:36-54).

resilient rubber granules." *Id.* at Col 10:18-19.  A "course" is
described as a layer. *See, e.g.,* Ex. 1, `*689 patent*, Col. 10:18
(referring to the "top course 6"), and col. 11:63 (referring to the
"top layer 6").  Figure 1 (as well as Figure 2), shows two distinct,
continuous, horizontal stratum of material – a "top course 6 and a
bottom mixed course 5." Ex. 1, `*689 patent,* Col 9:57-58, Figs. 1-2;
Ex. 2, `*752 patent*, Col 9:64-65, Figs. 1-2.



FIG. 1

The very purpose of the inventions of the `689 and `752 patents
is to install a layered infill material where the top layer of the
infill is free of sand – or "hard granules."  Indeed, in virtually
the entire "Background of the Art" sections of each patent, the
inventor describes what he perceives as several problems with prior
art turf products where the infill layer is either (1) a homogeneous

9

mixture of sand and resilient particles, (2) a non-homogeneous infill layer with rubber particles as the bottom course and sand as the top course, or (3) infill of substantially rubber only. Ex. 1, `689 patent`, Col. 1:38-2:67, Col. 4:36-47.

The inventor proposes an improvement over these prior art systems by introducing a second distinct layer of the infill layer – a "top course" – that is disposed upon a bottom course of mixed sand and rubber. Ex. 1, `689 patent`, Col. 5:40-41, 47-49.  This top course of "pure rubber particles" purports to keep the surface of the turf "substantially sand free." *Id.* The inventor similarly describes this distinction over the prior art in the Abstract of both patents:

> An infill layer of **two distinct graded courses of particulate material . . . a bottom course of intermixed hard sand and resilient rubber granules . . . and a top course exclusively of resilient rubber granules."**

Ex. 1, `689 patent,` p.1 (Abstract); Ex. 2, `752 patent,` p.1 (Abstract) (emphasis added).

And again in the very first sentence of text after the title of the invention:

> TECHNICAL FIELD
> The invention is directed to a synthetic grass with grass-like ribbons forming a lattice enmeshing a particulate infill having **a bottom layer of equally sized sand and rubber granules, and a top layer of rubber granules only**.

Ex. 1, `689 patent`, Col. 1:10-15; Ex. 2, `752 patent,` Col. 1:15-20 (emphasis added).

10

IV.   THE LAW OF CLAIM CONSTRUCTION

The "bedrock principle" of claim construction is "that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (*quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,* 381 F.3d 1111, 1115 (Fed. Cir. 2004)). Claim construction is a matter of law for the court to determine. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 384-91 (1996).

Claim terms are generally given their ordinary and customary meaning as they would be understood by one of ordinary skill in the art at the time of the invention, i.e., as of the effective filing date of the patent application. *Phillips,* 415 F.3d at 1313. However, claims of a patent do not exist in a vacuum. "Rather, they are part of 'a fully integrated written instrument' . . . consisting principally of a specification that concludes with the claims. For that reason, claims 'must be read in view of the specification, of which they are a part.'" *Id.* at 1315 (citations omitted). Thus, "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*

A court's primary focus in "determining the ordinary and customary meaning of a claim limitation is to consider the intrinsic evidence of record, namely, the patent itself, including the claims, the specification and, if in evidence, the prosecution history, from the perspective of one of ordinary skill in the art." *Atofina v. Great Lakes Chem. Corp.,* 441 F.3d 991, 996 (Fed. Cir. 2006)*.*

The Federal Circuit in *Phillips* "stressed the dominance of the specification [including the figures] in understanding the scope and defining the limits of the terms used in the claims." *On Demand Mach. Corp. v. Ingram Indus., Inc.,* 442 F.3d 1331, 1337–38 (Fed. Cir. 2006). Generally, the scope and outer boundary of claims is set by the patentee's description of the invention in the specification. *Id.* at 1338*.* Thus, when engaging in the claim construction analysis, it must be remembered that the specification "is the single best guide to the meaning of a disputed term" and is "[u]sually dispositive." *Phillips,* 415 F.3d at 1315*; Cephalon, Inc. v. Barr Labs., Inc.,* 389 F. Supp. 2d 602, 604 (D. Del. 2005)*.*

The specification may act as a dictionary when it expressly defines terms used in the claims. *Vitronics,* 90 F.3d at 1582. The Federal Circuit has also instructed that the specification may define claim terms "by implication" as a result of a term's consistent use throughout the specification. *Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.,* 262 F.3d 1258,

1268 (Fed. Cir. 2001), *quoting Vitronics,* 90 F.3d at 1582, 1584 n. 6. In other words, "a claim term may be clearly redefined without an explicit statement of redefinition." *Id.* (limiting "modes" to the three modes described in the preferred embodiments).

**V.   THE CLAIM TERMS AT-ISSUE AND SPRINTURF'S PROPOSED CONSTRUCTION**

The disputed claim terms (highlighted in bold below) are found in independent claim 1 of both the `689 and `752 patents:

`689 Patent

1. A synthetic grass assembly for installation on a supporting substrate, the assembly comprising:

a pile fabric with a flexible sheet backing and a plurality of upstanding synthetic ribbons of a selected length, the ribbons extending upwardly from an upper surface of the backing;

an infill layer of particulate material disposed interstitially between the upstanding ribbons upon the upper surface of the backing and of a depth less than the length of the ribbons, the particulate material selected from the group consisting of hard and resilient granules; said infill layer further including

**a bottom course of intermixed hard and resilient granules**, **disposed upon** the upper surface of the backing, and

**a top course substantially exclusively of resilient granules disposed upon** the bottom course, an upper portion of

the synthetic ribbons extending upwardly from a top surface of the top course wherein the synthetic ribbons:

> are longitudinally intermittently slit in a predetermined pattern of slits;

> an upper portion of the ribbons extending above the infill layer and longitudinally split into individual free-standing strands of a selected width to represent grass blades; and

> **a lower portion of the ribbons having said slits extended open forming laterally linked strands** disposed in a lattice structure enmeshing the surrounding particulate infill material.

<u>`752 Patent</u>

1. A synthetic grass assembly for installation on a supporting substrate, the assembly comprising:

a pile fabric with a flexible sheet backing and a plurality of upstanding synthetic ribbons of a selected length, the ribbons extending upwardly from an upper surface of the backing;

an infill layer of particulate material disposed interstitially between the upstanding ribbons upon the upper surface of the backing and of a depth less than the length of the ribbons, the particulate

14

material selected from the group consisting of hard and resilient granules, wherein the infill layer comprises:

> **a bottom course of intermixed hard and resilient granules of substantially identical size distribution, disposed upon** the top surface of the backing; and

> **a top course substantially exclusively of resilient granules** disposed upon the bottom course, an upper portion of the synthetic ribbons extending upwardly from a top surface of the top course.

\*          \*          \*          \*          \*

As pointed out by Judge Gaugan, these claims are essentially identical with a few distinctions:

> The main differences are between the independent claims (claim 1) of each patent which concern the description of the infill layer. In claim 1 of the '689 patent the infill layer is further defined by reference to not only a top course and a bottom course, but also through a "wherein" clause that provides details regarding the claimed ribbon. The '752 patent, on the other hand, claims the ribbon only in general terms but provides more detail regarding the bottom course of hard and resilient particles as having a "substantially identical size distribution."

Ex. 4 at 10.

Sprinturf proposes the following constructions, which apply equally to both patents where such terms are used, and which are consistent with the constructions set forth by the court in the Ohio case:

15

| Claim Limitation | Sprinturf's Proposed Construction |
|---|---|
| a bottom course of intermixed hard and resilient granules | a distinct, continuous layer that is made of hard and resilient granules when installed. |
| disposed upon | located on |
| a top course substantially exclusively of resilient granules | a distinct, continuous layer consisting entirely of resilient granules when installed. |
| a lower portion of the ribbons having said slits extended open forming laterally linked strands | a lower portion of the ribbons slit discontinuously (not a monofilament of synthetic grass) and extended open forming strands that are connected at the sides |
| substantially identical size distribution | 80% by weight of hard and resilient granules in the bottom course distributed in a range spanning a numerical difference of no more than 40 screen mesh standard. |

A common term in two of the phrases to be construed is the term "course."  For that reason, we treat the construction of the term "course" first and separately, then roll the proposed construction into the longer phrases to be construed where appropriate.

**A.  "Course" means "a distinct, continuous layer when installed."**

In the Ohio case, the court interpreted "course" to be a "relatively distinct, substantially continuous layer," Ex. 4, p. 17–18.  We agree with the Ohio court, with a few exceptions.  First, the terms "relatively" and "substantially" should be stricken from the definition, and second, it should be made clear to the jury that the patented turf is a product that is defined by its fixed structure.  As such, the jury must be given a frame of reference as to what structure is covered by the patent – the product that exists at the time of installation, or the product that may change over time based on use.  Since the claims in-issue begin with the language "a synthetic grass assembly *for installation*," it is clear that the structure covered by the patent claims is the structure as it exists "when installed."

*        *        *        *        *

The Ohio court adopted Fieldturf's definition of "course" which included the terms "relatively" and "substantially", based on a section of the specification that discussed how the turf moves and

shifts *after* the field is installed.   To do so here would be improper claim construction.   The Ohio court relied on Col 5:32-39 of the `689 patent in support of its construction that the term "course" should be defined to include the words "relatively" and "substantially":

> "The invention recognizes that the granular infill is a dynamic system" and
> "accommodates such dynamic activity in a number of ways."
> '689 patent, 5:32-39.   These descriptions thus support FieldTurf's proposal of a **"*relatively*** distinct, ***substantially*** continuous layer."

Ex. 4 at 19.   However, a wider review of the cited section of the specification of the `689 patent shows that this description was made in the context of what happens "once all the infill is installed" and after the turf is "under the impact and vibration of play activity, surface maintenance and weather precipitation."   *See* Ex. 1, `*689 patent*, Col 5:26-39   As the Ohio court correctly noted, "FieldTurf chose to write its claim as product claims, and those claims define the invention by its structure."   Ex. 4, p. 15 and 19. Defining the turf by its structure cannot include a definition of terms that take into account movement of the turf *after* it is installed, particularly where the preamble of the claim indicates that such product is "for installation."   The jury needs the court's guidance as to what structure the patent covers and which it does not.   Accordingly, the proper construction of "course" is "a distinct, continuous layer when installed."

**B.   "A bottom course of intermixed hard and resilient granules" means "a distinct, continuous layer of intermixed hard and resilient granules when installed."**

Rolling the proper construction of "course" into the full phrase to be construed by the court here yields the proposed construction.   The Ohio court found "intermixed" to mean "intermixed," Ex. 4 at 20, and the remaining terms of this phrase are not in dispute.

**C.   "Disposed upon" means "located on."**

Although this term was not initially proposed for construction in this case, Sprinturf believes it will help the jury to have an instruction that "disposed upon" means "located on."   Since this construction was proposed by Fieldturf in the Ohio case and adopted by the court there, there is no prejudice to have that term construed consistently here.

**D.   "A top course substantially exclusively or resilient material" means "a distinct, continuous layer consisting *entirely* of resilient granules when installed."**

Rolling the construction of "course" into the full phrase to be construed by the court here suggests that the "a top course substantially exclusively of resilient granules" means "a distinct, continuous layer *substantially exclusively* of resilient granules." In the Ohio case, the court interpreted "substantially exclusively" to mean "almost entirely," Ex. 4, p 21-22.   However, we respectfully disagree.   The word "substantially" has no meaning under a proper

19

construction of the claim since the specification repeatedly states that there is nothing more than pure rubber in the "top course" of the infill layer." To broaden the definition of the materials that make up the top course would (1) contradict the clear teachings of the patent and (2) improperly encompass prior art turf products. As such, the proper construction is "a distinct, continuous layer consisting *entirely* of resilient granules when installed."

Claims may be interpreted narrowly when the specification indicates the inventor intended to do so. For example,

> Where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question.

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.,* 242 F.3d 1337, 1341 (Fed. Cir. 2001) (limiting claims due to, *inter alia*, discussion in specification of the disadvantages of the prior art); *Watts v. XL Sys., Inc.,* 232 F.3d 877, 882-3 (Fed. Cir. 2000) (limiting invention to sole structure described in specification); *Wang Labs., Inc. v. America Online, Inc.,* 197 F.3d 1377, 1382 (Fed. Cir. 1999) (limiting claims to the "only system that is described and enabled" in the patent specification). Similarly,

> [The Federal Circuit] looks to whether the specification refers to a limitation only as a part of less than all possible embodiments or whether the specification read as a whole suggests that the very character of the invention requires the limitation be a part of every embodiment.

20

*Alloc, Inc. v. International Trade Commission,* 342 F.3d 1361, 1370 (Fed. Cir. 2003).

> [W]here the specification makes clear at various points that the claimed invention is narrower than the claim language might imply, it is entirely permissible and proper to limit the claims.

*Id.*, *citing SciMed Life,* 242 F.3d at 1345; *see, also, Hockerson-Halberstadt, Inc. v. Converse, Inc.,* 183 F.3d 1369 (Fed. Cir. 1999); *O.I. Corp. v. Tekmar Co.,* 115 F.3d 1576, 1580-2 (Fed. Cir. 1997) (because the specification "expressly distinguishe[d] over prior art," the claims were construed so as to not encompass such prior art).

Describing the "invention as a whole" in the specification, rather than only preferred embodiments, serves to limit the definition of a claim term. *C.R. Bard Inc. v. United States Surgical Corp.,* 388 F.3d 858, 864 (Fed. Cir. 2004), *citing Digital Biometrics, Inc. v. Identix, Inc.,* 149 F.3d 1335, 1347 (Fed. Cir. 1998) (relying on "global comments made to distinguish the applicants' 'claimed invention' from the prior art"). "Statements that describe the invention as a whole are more likely to be found in certain sections of the specification, such as the Summary of the Invention." *C.R. Bard,* 388 F.3d at 864, *citing Microsoft Corp. v. Multi-Tech Sys., Inc.,* 357 F.3d 1340, 1348 (Fed. Cir. 2004) ("Those statements, some of which are found in the 'Summary of the

21

Invention' portion of the specification, are not limited to describing a preferred embodiment, but more broadly describe the overall inventions of all three patents.")

Here, it cannot be refuted that the inventor stressed over and over, repeating consistently in the specification, that the invention as a whole required two separate and distinct courses – or layers – that make up the infill layer of the claimed synthetic grass product, and that the top course is "pure rubber."   In addition to the clear statements in the "Abstract" and the "Technical Field" of the patents, the inventor refers to the "pure rubber" top course **8 times** when describing the invention as a whole in the "Disclosure of the Invention" section:

DISCLOSURE OF THE INVENTION
[1]. . . The top surface is kept substantially sand free using a **pure rubber particle top course** of relatively large particles. . . .
Ex. 1, `*689 patent*,  Col 5:39-40.
[2]. . . A bottom course of sand and rubber mixed together is provided beneath the **pure rubber top course** for additional resilience . . . .
*Id.* at Col. 5:47-49.
[3]. . .The combination of **pure top rubber** course and network of fibrillated ribbons gives the look and feel of a natural turf surface. . . .*Id* at Col. 7:40-42.
 [4]. . .The mixed sand and rubber bottom course provides firm resilient support for the relatively thin **rubber top course**. . . .
*Id.* at Col 7:47-49.
.[5] . . The relatively thin top course that is in immediate contact with the athlete's body, has a high resilience where physical contact occurs and results in low skin abrasion due to

the **exclusive use of rubber**. . .*Id.* at Col.
7:52–55.
[6]. . . The **top pure rubber top course** will
always remain substantially free of sand . . .*Id*
at Col. 7:65–66.
[7]. . .The two layer installation **with rubber
only in the top layer** . . .. *Id.* at Col. 8:10–
11.
[8] . . .The invention maintains its resilience
. . .**since the top layer is of pure rubber
granules**. . . . *Id.* at Col. 8:17–19.

Although the inventor makes a single statement that "the top

course 6 is substantially exclusively of resilient rubber granules,"

by and large the "the specification makes clear at various points

that the claimed invention is narrower than the claim language might

imply" and, as such, "it is entirely permissible and proper to limit

the claims." *Alloc, Inc.*, 342 F.3d at 1370. Furthermore, it is well-

settled that claims should be interpreted "to preserve, rather than

defeat, their validity." *Eastman Kodak Co. v. Goodyear Tire & Rubber

Co.,* 114 F.3d 1547, 1556 (Fed. Cir. 1997).  To suggest that the top

layer can have a component of a material other than resilient

material would blur the line between the patented invention and the

prior art, causing the claims to read on U.S. Patent No. 4,337,283

to Haas, which discloses a homogeneous infill mixture of sand and

rubber, and other "conventional infill mixtures of sand and rubber,"

pointed out by the inventor himself in the `689 patent. Ex. 1, `*689

patent*, Col 1:45–52 and Col 2:10–20.

The examples above, particularly No. [8], are conclusive: the very character of the invention requires that the "top course" limitation be defined as "a distinct, continuous layer consisting *entirely* of resilient granules when installed," despite the claims inclusion of the word "substantially," which is not supported by the specification. *See, e.g. Id.*

Sprinturf's proposed construction of this claim element is consistent with the plain language of the claim when read in view of the specification.   Fieldturf's proposed construction arbitrarily inserts the word "predominantly" which appears nowhere in patent, including the claims.   The Court should not redraft the claim language as Fieldturf impermissibly proposes. *See, e.g., Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) (holding a court "may not redraft claims....").

> **E.    "A lower portion of the ribbons having said slots extended open forming laterally linked strands" means "a lower portion of the ribbons slit discontinuously (not a monofilament of synthetic grass) and extended open forming strands that are connected at the sides."**

In the Joint Claim Construction Statement, Fieldturf and Sprinturf agreed that "laterally linked strands" means "a ribbon slit discontinuously and not a monofilament blade of synthetic grass."   In the Ohio case, the court construed "laterally linked strands" as "strands that are connected at the sides."   Ex. 4 at 27–

28.   Combining the agreed upon definition with the Ohio court's construction yields the proposed construction.

> **F.    "Substantially identical size distribution" means "80% by weight of hard and resilient granules in the bottom course distributed in a range spanning a numerical difference of no more than 40 screen mesh standard."**

Sprinturf agrees with the construction set forth in the Ohio case.

## VI. CONCLUSION

For the reasons set forth above, Sprinturf respectfully requests that the Court enter the claim construction set forth above.

*I hereby certify, pursuant to L.R. 5.1B and 7.1D of the Northern District of Georgia, that the foregoing SPRINTURF'S OPENING CLAIM CONSTRUCTION BRIEF complies with the font and point selections approved by the Court in LR 5.1B. The foregoing pleading was prepared on a computer using 12-point Courier New font.*

Respectfully submitted,

*/s/  Edward C. Bresee, Jr.*
Edward C. Bresee, Jr.
Georgia Bar No. 004820
Charles H. Crawford, III
Georgia Bar No. 153073

MOZLEY, FINLAYSON & LOGGINS, LLP
One Premier Plaza, Suite 900
5605 Glenridge Drive
Atlanta, Georgia 30342-1386
Telephone: (404) 256-0700
Facsimile: (404) 250-9355
Email:  mbresee@mfllaw.com
        ccrawford@mfllaw.com

Attorneys for Defendant Specialty Surfaces International, Inc.

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

```
FIELDTURF USA, INC., a        :
Florida corporation and       :
FIELDTURF TARKETT, INC., a    :
Canadian company,             :
                              :  Civil Action No. 4:06-CV-224 HLM
              Plaintiffs,     :
                              :
       vs.                    :
                              :
SPECIALTY SURFACES            :
INTERNATIONAL, INC., t/a      :
SPRINTURF, a Pennsylvania     :
corporation,                  :
                              :
              Defendant.      :
```

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 17, 2007, I electronically filed the above and foregoing SPRINTURF'S OPENING CLAIM CONSTRUCTION BRIEF with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to:

| Jody L. Factor<br>Nicholas S. Lee<br>Factor & Lake, LTD<br>Suite 5G/ H<br>1327 West Washington Boulevard<br>Chicago, IL 60607 | Lawrence K. Nodine<br>Needle & Rosenberg<br>999 Peachtree Street<br>Suite 1000<br>Atlanta, GA 30309 |
|---|---|

**/s Charles H. Crawford III**
Charles H. Crawford III
Georgia State Bar No. 153073

*Attorney for Defendant Specialty
Surfaces International, Inc.*

26